**ROPER CORPORATION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 82–2696.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1983.

Decided July 15, 1983.

James G. Hertz, Kankakee, Ill., for petitioner Roper Corp.

Elaine Patrick, NLRB, Washington, D.C., for respondent Elliott Moore, NLRB.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and BROWN, Senior Circuit Judge.*

PELL, Circuit Judge.

In this appeal petitioner Roper Corporation seeks review of an order of the National Labor Relations Board (Board), which found that Roper violated sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* The Board cross-petitions for enforcement of its order.

## I. Facts

Roper has its corporate headquarters in Illinois and two production facilities in Maryland. Prior to September, 1979, Roper used a merit review system to determine wage rates for all non-bargaining unit employees. The Baltimore facility employed eight security guards who were covered by the merit review system. Under this system, guards whose salaries fell below the midpoint of their labor grade were reviewed every six months, while guards who earned above the midpoint were reviewed once a year. The guards received raises depending upon the quality of their work. Although the raises were minimal or nonexistent on some occasions, the average raise ranged from 16 cents to 25 cents an hour.

A representative election was conducted in August, 1979, after which the Board certified the International Union, United Plant Guard Workers of America (Union) as the bargaining representative of the guards. The Union was certified during September, and negotiations with Roper began in October. After extended negotiations, the parties signed a contract in June, 1980.

In the wake of the Union's certification, Roper decided to abandon the merit wage reviews for the guards. Roper based this decision partly upon the advice of counsel, who thought that merit raises during contract negotiations would run afoul of the Act, and partly upon the Union's expressed antipathy toward merit raises. There is considerable conflict as to when and how Roper informed the Union of this change in working conditions.

None of the guards was due a merit raise until February. During February, Andrew Eisner, Roper's Manager of Safety and Security, told several guards that he could not give them raises while Roper and the Union were negotiating the contract. Eisner allegedly also told one guard that they had "a beautiful deal," but "blew it by getting the Union in." Eisner denied saying this, but we must credit the finding of the Administrative Law Judge (ALJ) that Eisner did in fact make this statement.

## II. Decision of the ALJ

An employee of Roper filed a charge with the Board, which eventually led to a formal

* Bailey Brown, Senior Circuit Judge for the Sixth Circuit, is sitting by designation.

complaint against the company. The complaint charged that Roper failed to bargain in good faith with the Union and coerced employees concerning the exercise of their rights by informing them that they lost benefits when they selected the Union as their bargaining representative. An ALJ conducted an evidentiary hearing and concluded that Roper was guilty of both charges.

Three guards appeared at the hearing and testified about Eisner's statements. In addition, Dana Schubert, former Director of Industrial Relations for Roper, and Eisner each testified about the contract negotiations with the Union. Schubert and Eisner represented Roper during the negotiations, while Max McDermott and one of the guards, Shan Carroll, represented the Union. Another guard, Luther Hempe, sat in on the final two negotiation sessions. Of the three men who represented the Union, only Hempe appeared at the hearing. McDermott died prior to the hearing, but General Counsel for the Board offered no reason to explain Carroll's absence.

Schubert testified that he informed McDermott during the early negotiation sessions that Roper would not conduct any more merit reviews, including those scheduled for February. Schubert also testified that McDermott was firmly against continuation of merit raises in the contract, a contention borne out by the exclusion of merit reviews in the final contract. Eisner confirmed that McDermott opposed merit raises, but did not know whether Schubert informed McDermott that no reviews would be conducted during the negotiations.

The ALJ recognized that the General Counsel had failed to present any witnesses to support the Board's contention that the company did not inform the Union that scheduled reviews were to be cancelled. The ALJ did not consider the Board's failure to produce Carroll as indicative of what Carroll's testimony might be, but did discredit Schubert and Eisner because "they seemed less than candid and forthright." Having discredited all of the evidence in Roper's favor, the ALJ found that it was

"clear that at no time during the negotiations did Respondent notify the Union that it had discontinued the merit increase system." Based upon this factual premise, the ALJ found that Roper failed to give the Union adequate notice of a change in working conditions and therefore did not bargain in good faith. The Board adopted the ALJ's findings, conclusions, and order.

The ALJ also found Eisner's explanations to the guards as to why no merit reviews were forthcoming, and his statement that he thought the guards were better off without a Union, violative of section 8(a)(1) of the Act. The Board also adopted this finding.

### III. Failure to Bargain

Under section 8(a)(5) of the Act it is an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." It is well settled that an employer fails to bargain in good faith when it unilaterally changes existing working conditions while negotiating with a union. An employer must give advance notice to the union, which must be adequate to allow the union to bargain about the proposed change. Failure to give adequate notice constitutes a violation of sections 8(a)(1) and (5) of the Act. *NLRB v. Katz*, 369 U.S. 736, 747, 82 S.Ct. 1107, 1113–1114, 8 L.Ed.2d 230 (1962); *Caterpillar Tractor Co. v. NLRB*, 658 F.2d 1242 (7th Cir.1981); *American Cyanamid Co. v. NLRB*, 592 F.2d 356 (7th Cir.1979); *NLRB v. Proof Co.*, 242 F.2d 560, 562 (7th Cir.1957), *cert. denied*, 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43. Roper does not contest these principles, but rather argues that the ALJ and the Board erred in finding that the company violated the duty to bargain. As this is essentially a challenge to the ALJ's fact findings, we must turn out attention to the evidence presented during the hearing.

The ALJ's conclusion that Roper did not give the Union notice of the change in working conditions, a finding that was adopted by the Board, must be affirmed if "supported by substantial evidence on the

record considered as a whole." 29 U.S.C. § 160(f). We may not displace the ALJ's choice between two fairly conflicting views, but neither are we barred from "setting aside a Board decision when [we] cannot conscientiously find that the evidence supporting the decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951). "Substantial evidence" exists when there is sufficient evidence "to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Illinois Central Railroad v. Norfolk & Western Railway,* 385 U.S. 57, 66, 87 S.Ct. 255, 260, 17 L.Ed.2d 162 (1966); *see also Missouri-Kansas-Texas Railroad Co. v. United States,* 632 F.2d 392, 399 (5th Cir.1980), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3004, 69 L.Ed.2d 388 (1981). The General Counsel bears the burden of proving by a preponderance of the evidence that Roper committed an unfair labor practice. *NLRB v. Silver Spur Casino,* 623 F.2d 571, 577 (9th Cir.1980), *cert. denied,* 451 U.S. 906, 101 S.Ct. 1973, 68 L.Ed.2d 294 (1981). The issue before us, then, is whether a court would have been justified in refusing to direct a verdict in Roper's favor on the question whether adequate notice was given.

■ The General Counsel did not present any evidence to support the claim that Roper did not notify the Union of the change in working conditions. This failure may have been in the belief that it was Roper's obligation to prove that notice was given, or simply because no evidence was available. Failure to inform the Union, however, is the heart of the claim that Roper did not bargain in good faith, and the General Counsel bore the burden of proving this element. Despite the dearth of evidence in favor of the General Counsel's position, the ALJ found the burden of proof had been met. The ALJ reasoned that his determination that Schubert and Eisner were untruthful in testifying that notice was given was sufficient proof that notice was not

given. Although there is a certain surface appeal to this reasoning, we do not believe that the General Counsel successfully carries the burden of proof simply by presenting adverse testimony and then convincing the ALJ to discredit it.

The ALJ clearly was under no obligation to believe the uncontradicted testimony of Schubert or Eisner. This, however, does not mean that the ALJ was entitled to find that the opposite of that to which they testified was true. Courts have consistently required more than this type of "proof" before allowing the party with the burden of proof to go to the jury. The reason for this is clear, for "were the rule otherwise a case could be made for any proposition in the world by the simple process of calling one's adversary and arguing to the jury that he was not to be believed." *Janigan v. Taylor,* 344 F.2d 781, 784 (1st Cir.1965), *cert. denied,* 382 U.S. 879, 86 S.Ct. 164, 15 L.Ed.2d 120; *see also Nishikawa v. Dulles,* 356 U.S. 129, 137, 78 S.Ct. 612, 617, 2 L.Ed.2d 659 (1959); *Moore v. Chesapeake & Ohio Railway Co.,* 340 U.S. 573, 71 S.Ct. 428, 95 L.Ed. 547 (1951); *United States v. Marchand,* 564 F.2d 983 (2d Cir.1977), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); *Dyer v. MacDougall,* 201 F.2d 265, 269 (2d Cir.1952). Furthermore, if such "proof" were acceptable as sufficient evidence, effective review of fact-finding would involve analysis of a chimera.

■ Our decision that the ALJ erred in finding that the General Counsel met his burden of proof is bolstered by the fact that the General Counsel did not produce evidence that was available. Shan Carroll, who represented the Union during negotiations, was not called as a witness despite his apparent availability. The failure to present Carroll supports an inference that Carroll would not have supported the Board's position. *NLRB v. MFY Industries, Inc.,* 573 F.2d 673, 675 (10th Cir.1978). When relevant evidence is not presented by the party with the burden of proof, it is simply not enough to rely on discrediting adverse testimony presented by the opposi-

tion. Accordingly, we hold that the finding that Roper failed to notify the Union of the change in working conditions was not supported by sufficient evidence to justify the Board's order.

*IV. Eisner's Statements*

The ALJ found that on a number of occasions Eisner informed individual guards that he was not able to grant merit reviews during the negotiations. These statements came in response to the guards' inquiries as to why no reviews were being conducted. Eisner also told one guard that the guards "had a beautiful deal," which they "blew" when they voted in favor of the Union. Without distinguishing between these statements, and without any analysis of the potential impact these statements would have on the guards, the ALJ found that Eisner, "by telling employees that they had lost benefits because they selected the Union as their bargaining representative, violated Section 8(a)(1) of the Act." We do not agree.

Section 8(c) of the Act explicitly provides that: "The expressing of any views, argument, or opinion . . . shall not constitute or be evidence of an unfair labor practice . . . if such expression contains no threat of reprisal or force or promise of benefits." 29 U.S.C. § 158(c). Section 8(c) is simply a recognition that an employer has a First Amendment right to communicate his views to his employees. *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 617, 89 S.Ct. 1918, 1941–1942, 23 L.Ed.2d 547 (1969); *see also Charge Card Association v. NLRB,* 653 F.2d 272, 273 (6th Cir.1981); *NLRB v. Carilli,* 648 F.2d 1206, 1212 (9th Cir.1981); *NLRB v. Proler International Corp.,* 635 F.2d 351, 355 (5th Cir.1981). We must begin our analysis from the premise that section 8(c), "at an irreducible minimum protects the right of an employer to state its views, argument, or opinion, and to make truthful statements of existing facts. The First Amendment would permit no less." *Dow Chemical Co. v. NLRB,* 660 F.2d 637, 644 (5th Cir.1981). A statement is only subject to sanctions when it is demonstrated to be coercive, such as threats or promises. *NLRB v. South Shore Hospital,* 571 F.2d 677, 680 (1st Cir.1978).

The ALJ held that Eisner's statements were intended to tell employees that they lost benefits by voting for the Union. The ALJ assumed, without analysis, that this was impermissible. Had Eisner implied to the guards *prior to the election* that they would lose benefits if they voted for the Union, then the statements might well have been coercive. But in this case Eisner did nothing more than (1) respond to questions concerning the termination of merit reviews, and (2) express his opinion that the guards should not have voted for the Union. These statements did not contain any threats of reprisal or any promises that benefits would be increased if the guards repudiated the Union. Furthermore, the explanation for the termination of merit raises was true. Assuming, as we must from this record, that the termination of the raises was not illegal, then there can be no basis for holding that a truthful explanation of the situation was coercive. Eisner's expression of his own opinion concerning the Union is also protected speech. An employer is not required either to say something nice or say nothing at all about a union. We fail to see how Eisner's statement, coming after the Union won the election, can be seen as either a threat or a promise.

For the reasons stated in this opinion the Board's order is denied enforcement.

ENFORCEMENT DENIED.