## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## HAWKINS CONSTRUCTION COMPANY, Respondent.

### No. 87–2701.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1988.

Decided Sept. 29, 1988.

Howard E. Perlstein, Washington, D.C., for petitioner.

Dean G. Kratz, Omaha, Neb., for respondent.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and STUART,* Senior District Judge.

JOHN R. GIBSON, Circuit Judge.

The National Labor Relations Board has applied for enforcement of its unfair labor practice order requiring Hawkins Construction Company to supply Local 1140 of the Laborers International Union of North America with requested information regarding the company's hiring and subcontracting practices. Hawkins argues that substantial evidence does not support the Board's finding that Hawkins violated the

---

* The HONORABLE WILLIAM C. STUART, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

National Labor Relations Act by refusing to supply the requested information.[1] We conclude that the Board improperly rejected the credibility determinations of the administrative law judge in reversing his finding that the union's request for information was made in bad faith. We therefore deny enforcement of the Board's order.

Hawkins is a construction contractor with an office in Omaha, Nebraska, and is a member of the Heavy Contractors Association (HCA) and the Omaha Building Contractors Employers Association (OBCEA). These groups are authorized to engage in collective bargaining on Hawkins' behalf and each has a bargaining agreement with Local 1140. These agreements include provisions relating to hiring hall practices and union referral services, and they apply to all construction workers and subcontractors hired by Hawkins in specified Nebraska counties.

In the spring of 1986, a dispute arose regarding allegations by Local 1140 that Hawkins was not using the union's referral service to hire workers. Although the parties reached an agreement resolving the matter in May, Henry Frank Schaefer, the assistant business manager of Local 1140, and Daniel K. Prochnau, a business representative for the union, testified that in May, June and early July they continued to receive complaints from union members that Hawkins was hiring workers "off the street." Schaefer testified that some of these members came to his office in mid-July and filled out forms stating that Hawkins' actions had resulted in their being out of work. Schaefer further testified that the union uses such forms to begin grievance investigations.

On July 23, 1986, Hawkins filed a lawsuit against Local 1140. Two days later, Schaefer sent Hawkins a letter requesting information relating primarily to the company's hiring and subcontracting practices over the past four years.[2] The letter states that it "constitutes a grievance," and that Local 1140 requested the information to "determine whether there is merit to this grievance." In a letter dated July 31, Hawkins' executive vice president, Willis M. Epstein, responded that it would be necessary for the union to "declare the grievance" before Hawkins could provide the information.

Further correspondence between Schaefer and Epstein failed to resolve the matter. Local 1140 filed charges against Hawkins with the Board, which issued a complaint alleging that Hawkins was engaging in an unfair labor practice by failing to furnish Local 1140 with the requested information, thus breaching its duty to bargain in good faith under 29 U.S.C. § 158(a)(1), (5).

The case was heard before an administrative law judge in October. The ALJ concluded that although most of the information requested by the union was relevant to its duties as the employees' collective bargaining representative, see NLRB v. Acme Indus. Co., 385 U.S. 432, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967), the union's request was made in bad faith because its only purpose was to harass Hawkins in retaliation for the lawsuit filed against the

---

1. 29 U.S.C. § 158(a) (1982) provides:
   It shall be an unfair labor practice for an employer—
      (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
      \*   \*   \*   \*   \*   \*
      (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

2. The letter requested:
   (a) A list of your firms [sic] projects started or completed since June 1, 1982.
   (b) A list of subcontractors with whom you have subcontracted work, with a copy of your subcontracting agreement since June 1, 1982, together with wage and fringe benefits paid to

or for employees on the above projects during the above time period.
   (c) A list of your present employees, with Social Security Numbers, date of hire, sex, and race from June 1, 1982 to date.
   (d) Job number and daily time card records of employees, together with wages and fringe benefits paid to or for employees on the above projects during the above time period.
   (e) A copy of your up-to-date Workmen's Compensation Insurance Policy and your subcontractors policy.
   (f) A copy of your Nebraska unemployment records.
   (g) And a copy of your posting of EEOC compliance forms.

union on July 23. Schaefer, Prochnau and Epstein testified before the ALJ. In reaching his decision, the ALJ stated that his findings of fact were based on the entire record, including his observation of the witnesses' demeanor, and that the question of good faith turned on credibility. The ALJ stated that he did not believe Schaefer or Prochnau "when they testimonially described conversations they had with workers allegedly complaining about the hiring practices of Hawkins," and that he did "not believe Schaefer's denial that the lawsuit motivated him." The ALJ also "[found] it incredible that Schaefer would have sat on worker complaints for some 6 weeks," without contacting Epstein or obtaining or documenting specific information about the workers' complaints, rather than waiting until mid-July to record the complaints "in a generalized fashion." The ALJ further found that the timing of Schaefer's request, the common patterns of language among the employees' written complaints, and the lack of dates on the complaints, although consistent with innocent circumstances, further supported a finding that the union's request was made in bad faith.

General Counsel for the Board filed exceptions to the ALJ's decision, and the Board issued its final decision and order directing Hawkins to supply the requested information. *Laborers Local 1140 (Hawkins Constr. Co.)*, 285 N.L.R.B. No. 147 (1987). The Board rejected the ALJ's finding that the union's request was made in bad faith, stating that the judge's reasons for discrediting Schaefer and Prochnau's testimony "were based on his analysis of the content of the testimony rather than on the witnesses' demeanor," and that the Board disagreed with the ALJ's reasoning and the inferences drawn to support his conclusions. The Board found that the union had requested the information in good faith, and that Hawkins had violated 29 U.S.C. § 158(a)(1) and (5) by refusing to provide the information. The Board then filed this application for enforcement of its order.

The only issue we need address is whether substantial evidence supports the Board's finding that the union made a good-faith request for information. Such factual findings are conclusive "if supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e) (1982). In reviewing the entire record, we must take into consideration the ALJ's contrary decision. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 492–97, 71 S.Ct. 456, 466–69, 95 L.Ed. 456 (1951). While reviewing courts generally accord much deference to an agency's decision adopting the ALJ's findings, an agency's departure from such findings is vulnerable "if it fails to reflect attentive consideration to the ALJ's decision." *Citizens State Bank v. FDIC*, 718 F.2d 1440, 1444 (8th Cir.1983). This is particularly true when the credibility of witnesses is important in the case. *See Universal Camera*, 340 U.S. at 496, 71 S.Ct. at 468. The ALJ's findings "which turn on credibility determinations with respect to witnesses whom he alone saw and heard, are entitled to considerable weight." *Acme Products, Inc. v. NLRB*, 389 F.2d 104, 106 (8th Cir.1968) (citations omitted). "Thus, evidence in the record which, when taken alone, may amount to 'substantial evidence' will often be insufficient when the [ALJ] has, on the basis of the witnesses' demeanor, made credibility findings contrary to the Board's position." *Colson Equip., Inc. v. NLRB*, 673 F.2d 221, 223–24 (8th Cir.1982) (citations omitted). In such cases, we review the Board's findings more critically, and the evidence supporting the Board's conclusion must be stronger than would be required when the ALJ's findings are accepted. *Id.* at 223.

We are satisfied that, in light of the ALJ's finding of bad faith, the Board's contrary conclusion is not supported by substantial evidence. The most troublesome argument asserted by the General Counsel is that when relevant evidence is not presented by the party with the burden of proof, here Hawkins, it is insufficient to rely on discrediting adverse testimony presented by the opposition. *Roper Corp. v. NLRB*, 712 F.2d 306, 310–11 (7th Cir. 1983). The General Counsel argues that the burden was on Hawkins to show that Schaefer or Prochnau knew about the law-

suit and made their demand in retaliation, and that disbelief of Schaefer and Prochnau by the ALJ did not fulfill the burden. He particularly points to Schaefer's statement in the administrative hearing that he was familiar with the lawsuit, but that Hawkins, on cross-examination, failed to ask Schaefer *when* he was so familiar. The ALJ addressed this issue and recognized that Hawkins had the burden of proof on the affirmative defense of bad faith, and that his disbelief of Schaefer was not sufficient to satisfy this burden, specifically acknowledging the holding in *Roper Corp.*[3] The ALJ, however, set out sound reasons for finding Hawkins had met this burden. The ALJ found that when Schaefer mailed the letter of July 25 he was aware of the suit.[4] He also stated that he did not believe Schaefer's denial that the lawsuit had nothing to do with the request letter,[5] and that the only purpose in sending the letter was retaliation.[6]

Hawkins, the union, and the General Counsel, as well as the ALJ, left the record in a less than satisfactory state. We are satisfied, however, that the record was such that the ALJ was justified in his findings and conclusion that Schaefer had knowledge of the suit and made the demand in retaliation. Bad faith is an issue that of necessity has a strong base in credibility. We conclude that the Board, in reversing the ALJ, did not engage in a close analysis of the reason for the ALJ's findings and conclusions. It simply set forth the findings of the ALJ, the general support for the requirement of good faith, and found that the union had made a good faith request for the information.[7] The Board

3. The ALJ stated:
   Respondent has the burden of persuasion on its affirmative defense of bad faith, and it does not carry that burden simply because I disbelieve Schaefer's denial of a retaliation motivation. Stated differently, disbelief of a negative (denial) does not, standing alone, establish a positive (the affirmative) which a party with the burden of persuasion as to that issue must establish by a preponderance of the evidence. *Roper Corp. v. NLRB*, 712 F.2d 306, 113 LRRM 3557, 3560 (CA 7, 1983). As I shall outline, however, there are additional factors which support Respondent's affirmative defense of bad faith.
   *Laborers Local 1140 (Hawkins Constr. Co.)*, No. 17-CA-13082-1, slip op. at 15, n. 20 (NLRB March 2, 1987).

4. The ALJ found:
   On cross-examination Schaefer admitted that he is aware of a lawsuit Hawkins filed on (Wednesday) 23 July against Local 1140, and he denied that the lawsuit had anything to do with his mailing the request letter of (Friday) 25 July (1:55). The nature of the lawsuit is not described in the record. Schaefer was not asked whether he was informed of the filing of the lawsuit before he issued his 25 July request letter. There is no evidence showing when a copy of the papers from the lawsuit was served on Local 1140, or what the average elapsed time is in Omaha from the filing to service of lawsuits. In the absence of any contrary evidence, I find that a copy of the suit was served forthwith on the Union. When Schaefer mailed his letter of 25 July, he was, I find, aware of Respondent's suit against the Union.
   *Hawkins*, slip op. at 7.

5. The ALJ found:
   Before me, Schaefer denied that Respondent's 23 July lawsuit had anything to do with the request letter which Schaefer mailed 2 days later to Hawkins (1:55). I do not believe Schaefer, and I find that he was motivated by the lawsuit in sending his request of 25 July.
   *Hawkins*, slip op. at 14.

6. The ALJ found:
   I find that the Union's only purpose in sending its 25 July letter was to harass Hawkins in retaliation for the lawsuit which Hawkins filed 2 days earlier against Local 1140. Thus, the affirmative factors which support my disbelief of Schaefer's denial of a retaliation motivation are these: (1) Schaefer did not telephone Epstein when he supposedly began receiving complaints from employees in late May; (2) Schaefer did not begin immediately to document these complaints with specifics as to dates and jobs; and (3) the timing of the request letter as 2 days after Hawkins sued the Union. Because, as I find, the Union submitted its request in bad faith, I find that Respondent had no duty to comply. Accordingly, I shall dismiss the complaint.
   *Hawkins*, slip op. at 16.

7. The Board held:
   We find that in the instant case the Union made a good-faith request for information which the Respondent unlawfully denied. The judge's reasons for disbelieving the General Counsel's witnesses' uncontradicted testimony were based on his analysis of the content of the testimony rather than on the witnesses' demeanor. We disagree with the reasoning and inferences drawn by the judge to support his conclusions and find from our evaluation of the record that the conclusion

then engaged in a discussion in which it, in essence, substituted its findings for those of the ALJ, without giving attentive consideration to the ALJ's findings of fact. *Citizens State Bank,* 718 F.2d at 1444.

The Board also argues that the ALJ rejected the testimony on the basis of its content, rather than the witnesses' demeanor. A similar effort by the Board to evade an ALJ's credibility determinations was rejected in *Ewing v. NLRB,* 732 F.2d 1117, 1122 (2d Cir.1984), where the Second Circuit described the Board's distinction between demeanor and content-based credibility determinations as "overly fine" and, in that case, "untenable." Similar considerations apply here. In analyzing the bad faith issue, the ALJ specifically stated on three occasions that he simply did not believe Schaefer and Prochnau when they testified before him. We do not know of any clearer way for the ALJ to state that he found the testimony untrustworthy. While the ALJ went on to analyze the logic of the statements, this does not detract from the strong indications throughout the ALJ's decision that his findings were substantially based on his observations of the witnesses. This is not a case like *Consolidation Coal Co. v. NLRB,* 669 F.2d 482, 488 (7th Cir.1982), in which the ALJ merely included a "general preliminary recitation, of a boilerplate nature" that observation of witnesses was a factor in his decision. Although much of the evidence relied upon by the ALJ was circumstantial, the Board has not offered a reasonable ground for upsetting his decision. *See, e.g., Acme Products, Inc.,* 389 F.2d at 106.

We have considered the remaining arguments offered by the Board and have determined that they are without merit. Enforcement of the Board's order is denied.

that the Union acted in bad faith is unwarranted. *J.N. Ceazan Co.,* 246 NLRB 637, 638 n. 6 (1979); *Electrical Workers IBEW Local 38 Cleveland Electric,* 221 NLRB 1073, 1084 n. 5 (1975).

*Laborers Local 1140 (Hawkins Constr. Co.),* 285 N.L.R.B. No. 147, slip op. at 5 (Sept. 29, 1987).