## LOCAL 627, INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Petitioner,

v.

## NATIONAL LABOR RELATIONS BOARD, Respondent, South Prairie Construction Company, Intervenor.

No. 77–2031.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 8, 1979.

Decided March 6, 1979.

Rehearing Denied April 4, 1979.

---

Laurence Gold, Washington, D. C., with whom J. Albert Woll and Marsha S. Berzon, Washington, D. C., were on the brief, for petitioner.

Mary Schuette, Atty., N. L. R. B., Washington, D. C., a member of the bar of the Supreme Court of New York, pro hac vice, by special leave of court, with whom John S. Irving, Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, and Robert G. Sewell, Atty., N. L. R. B., Washington, D. C., were on the brief, for respondent.

Stanley R. Strauss, Washington, D. C., with whom Michael J. Bartlett, Washington, D. C., was on the brief, for intervenor.

Before TAMM and WILKEY, Circuit Judges, and BARRINGTON D. PARKER, United States District Judge for the District of Columbia.*

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

In this "double breasted"[1] construction case, we face issues concerning a construc-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. The term is used to describe contractors who operate both unionized and nonunionized sub-

tion company's simultaneous operation of union and nonunion subsidiaries. We affirm the decision of the National Labor Relations Board (Board) that the construction workers employed by South Prairie Construction Company (South Prairie), a subsidiary of Peter Kiewit Sons', Inc. (Kiewit, Inc.), form a separate appropriate bargaining unit from the unit of construction workers employed by Peter Kiewit Sons' Company (Kiewit), another subsidiary of Kiewit, Inc.

I

Both Kiewit and South Prairie are wholly owned subsidiaries of Kiewit, Inc., a Nebraska corporation. For many years, Kiewit engaged in heavy and highway construction in Oklahoma. In 1970, the company signed a collective bargaining agreement with Local 627 of the International Union of Operating Engineers, which had represented Kiewit's employees since 1960.[2] The agreement was to run for three years, and included union shop and hiring hall provisions.[3]

Kiewit was the only highway contractor in Oklahoma to have a union contract with its employees and, consequently, paid higher wages than its competitors.[4] In order to improve its competitive position vis-á-vis rival contractors, Kiewit, Inc. brought South Prairie, which had operated as a nonunion contractor outside Oklahoma, into that state to seek construction work.

After South Prairie began doing business in Oklahoma, Local 627 tried unsuccessfully to persuade Kiewit, Inc. and South Prairie to apply the Kiewit union agreement to South Prairie. It then filed a charge alleging that the employers' conduct violated the National Labor Relations Act. In September, 1972 the General Counsel of the Board issued a complaint charging that the employers' refusal to recognize Local 627 as the representative of South Prairie employees violated Sections 8(a)(1)[5] and 8(a)(5)[6] of the Act.

An administrative law judge (ALJ) upheld the General Counsel's complaint. The

---

sidiaries. In general, double breasted units are formed in order to allow a contractor to compete for union and nonunion work. For example, a subcontractor may wish to operate one corporation that employs union workers and which, therefore, can bid for work from general contractors who let contracts only to unionized subcontractors. Simultaneously, the subcontractor may operate a nonunionized corporation which will bid on jobs let by general contractors who do not require unionized subcontractors. *See* D. Leslie, Cases and Materials on Labor Law: Process and Policy 202 (1979). *See also* Bornstein, *The Emerging Law of the "Double Breasted" Operation in the Construction Industry*, 28 Labor L.J. 77 (1977); Penfield, *The Double-Breasted Operation in the Construction Industry*, 27 Labor L.J. 89 (1976).

In this case, the board of directors of Peter Kiewit Sons', Inc. (Kiewit, Inc.) believed that Peter Kiewit Construction Co. (Kiewit), the only unionized highway construction contractor in Oklahoma, would be unable to continue to compete successfully against nonunion contractors. Peter Kiewit Sons' Co., 206 N.L.R.B. 562, 564 (1973). However, during the period from January 1, 1971 until late November, 1971, when South Prairie Construction Company (South Prairie) filed to do business in Oklahoma, Kiewit obtained more highway construction contracts than all but one of thirteen rival bidders. *Local 627, Int'l Union of Oper. Eng'rs v. NLRB*, 171 U.S.App.D.C. 102, 106 n.6, 518 F.2d 1040, 1044 n.6 (1975), *aff'd in part, re-*

manded in part sub nom. South Prairie Const. Co. v. Local 627, Int'l Union of Oper. Eng'rs, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 782 (1976) (per curiam).

2. Prior to 1970, Local 627 had negotiated at least two collective bargaining agreements with Kiewit. Peter Kiewit Sons' Co., 206 N.L.R.B. at 563.

3. The 1970 agreement and its predecessors required Kiewit employees to join and remain members of Local 627 in order to keep their jobs. *Id.* at 564.

4. Still, at the time South Prairie began operations in Oklahoma, Kiewit was not at an obvious competitive disadvantage with nonunion rivals. *See* n.1 *supra.*

5. Section 8(a)(1), 29 U.S.C. § 158(a)(1) (1976) provides that "[i]t shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7, 29 U.S.C. §] 157 of this title."

6. Section 8(a)(5), 29 U.S.C. § 158(a)(5) (1976) provides that "[i]t shall be an unfair labor practice for an employer . . . to refuse to bargain collectively with the representatives of his employees . . . ."

ALJ found that South Prairie's Oklahoma operations had been instituted in order to maximize Kiewit, Inc.'s profits, and that South Prairie performed construction work that Kiewit otherwise would have performed under the contract. *Peter Kiewit Sons' Co.*, 206 N.L.R.B. 562, 573 (1973). The ALJ further found that the two subsidiaries were sufficiently interrelated so that the Kiewit contract could be imposed upon South Prairie. *Id.* at 573–75. Finally, the ALJ concluded that employees of both Kiewit and South Prairie constituted a single appropriate bargaining unit. *Id.* at 575.[7]

The Board reversed. It concluded that Kiewit and South Prairie could not be considered a "single employer" for collective bargaining purposes, and thus, South Prairie could not be bound by Kiewit's contract. The Board supported its separate employer holding on several grounds: the two subsidiaries had been operated as separate enterprises for many years, they had different offices with separate officers and permanent employees, they did not subcontract work to each other, their employees received different wages and benefits, and the labor policies of South Prairie, other than the decision to operate as a union or nonunion company, were set by the officials of the subsidiary. *Id.* at 562–63.

On appeal, this court found the Board's decision that Kiewit and South Prairie were

7. Section 9(b) of the National Labor Relations Act, 29 U.S.C. § 159(b) (1976) gives the National Labor Relations Board (Board) the authority to define the appropriate bargaining unit. *See* text at —— of 191 U.S.App.D.C., at 848 of 595 F.2d *infra.*

8. For example, Kiewit's Oklahoma area manager became president of South Prairie. *Local 627 v. NLRB*, 171 U.S.App.D.C. at 109, 518 F.2d at 1047. South Prairie's president and vice-president and supervisors who had worked for Kiewit were moved to South Prairie in substantially the same capacities. *Id.*

9. The Supreme Court recognized that this court had applied the criteria of *Radio & Television Broadcast Technicians Local Union 1264, Int'l Brotherhood of Elec. Workers, AFL–CIO v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965). *South*

separate employers unsupported by the record. *Local 627, International Union of Operating Engineers v. NLRB*, 171 U.S.App. D.C. 102, 109, 518 F.2d 1040, 1047 (1975), aff'd in part, remanded in part sub nom. *South Prairie Construction Co. v. Local 627*, 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 782 (1976) (per curiam). The court relied, *inter alia*, on the uncontested facts that Kiewit, Inc. had decided that South Prairie would operate as a nonunion company, and that the subsidiaries had interchanged key supervisory employees,[8] to find a "substantial qualitative degree of interrelation of operations and common management," *id.* 171 U.S.App.D.C. at 108, 518 F.2d at 1046–47. Accordingly, it held that Kiewit and South Prairie were a single employer. The court also held that Kiewit and South Prairie employees made up an appropriate collective bargaining unit. *Id.* 171 U.S.App.D.C. at 110, 112, 518 F.2d at 1048, 1050.

The Supreme Court, in a per curiam opinion, affirmed in part and remanded in part. The Court upheld this court's decision that South Prairie and Kiewit form a single employer,[9] but stated that this court should not have decided the appropriateness of the bargaining unit without first allowing the Board to pass on the issue. *South Prairie Construction Co. v. Local 627, International Union of Operating Engineers*, 425 U.S. 800, 805, 96 S.Ct. 1842, 48 L.Ed.2d 782 (1976) (per curiam).[10] The Court termed

*Prairie Const. Co. v. Local 627*, 425 U.S. at 802, 96 S.Ct. 1842. *Radio Union* states that the controlling criteria "are interrelation of operations, common management, centralized control of labor relations and common ownership." *Radio Union v. Broadcast Service*, 380 U.S. at 256, 85 S.Ct. at 877. In applying *Radio Union*, this court stated that not all criteria need be present in each case, and that "single employer" status depends on all the circumstances of the case. *Local 627 v. NLRB*, 171 U.S.App. D.C. at 107, 518 F.2d at 1045.

10. The Board did find that the employees of each subsidiary constituted a separate bargaining unit, Peter Kiewit Sons' Co., 206 N.L.R.B. at 563, but the Supreme Court stated that "a fair reading of [the Board's] decision discloses that it did not address the 'unit' question on the basis of any assumption, *arguendo*, that it might have been wrong on the threshold [sin-

this court's consideration of the scope of the bargaining unit issue "incompatible with the orderly functioning of the process of judicial review." *Id.* (quoting *NLRB v. Metropolitan Life Insurance Co.*, 380 U.S. 438, 444, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965) ).

On remand, the Board found that South Prairie's employees have a "distinct and separate community of interests"[11] from Kiewit employees, and constitute an appropriate bargaining unit separate from the unit formed by Kiewit's employees. *Peter Kiewit Sons' Co.*, 231 N.L.R.B. No. 13 (1977). The Board relied on the factors used to determine whether a multiplant or single plant unit is appropriate,[12] to conclude that imposition of the Kiewit agreement onto South Prairie's employees would therefore be improper. *Id.* at 8.

## II

■ Section 9(b) of the National Labor Relations Act, 29 U.S.C. § 159(b) (1976) confers authority upon the Board to designate an appropriate bargaining unit: "The Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall

be the employer unit, craft unit, plant unit, or subdivision thereof." Section 9(b) confers a broad discretion on the Board to determine appropriate bargaining units, *International Union of Elec. Workers v. NLRB*, 135 U.S.App.D.C. 355, 363, 418 F.2d 1191, 1199 (1969). Board determinations will not be overturned unless they are arbitrary and unreasonable, *American Bread Co. v. NLRB*, 411 F.2d 147, 153 (6th Cir. 1969), and a reviewing court may not substitute its own judgment for a rationally supported position adopted by the Board, *Local 1325, Retail Clerks International Association v. NLRB*, 134 U.S.App.D.C. 298, 304, 414 F.2d 1194, 1200 (1969).

■ The breadth of agency discretion is emphasized in the oft-echoed statement that "[t]he Board's duty is to choose *an* appropriate unit, and it may select among several appropriate ones," *Wheeler-Van Label Co. v. NLRB*, 408 F.2d 613, 617 (2d Cir.), *cert. denied*, 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969) (emphasis in original).[13] More than one appropriate bargaining unit logically can be defined in any particular factual setting. *Local 1325, Retail Clerks International Ass'n*, 134 U.S.App.D.C. at 306, 414 F.2d at 1202. For example, in *Sheraton-Kauai Corp. v. NLRB*, 429 F.2d

gle] 'employer' issue." *South Prairie Const. Co. v. Local 627*, 425 U.S. at 804, 96 S.Ct. at 1844 (emphasis in original) (footnote omitted).

**11.** The "community of interests" doctrine, the cornerstone of the Board's policies on appropriateness of bargaining units, operates "to group together only employees who have substantial mutual interests in wages, hours, and other conditions of employment." 15 NLRB Ann. Rep. 39 (1950).

**12.** The Board said that "[a]lthough Kiewit and South Prairie are not, in the traditional sense, separate plants, the factors used to determine whether a multiplant or a single-plant unit is appropriate are relevant here." Peter Kiewit Sons' Co., 231 N.L.R.B. No. 13, at 4 n.7 (1977). The Board usually determines the composition of an appropriate bargaining unit prior to a representation election. *See* R. Gorman, Labor Law 66 (1976). The problem whether one or more of an employer's plants constitutes an appropriate bargaining unit has been particularly thorny for the Board, *see id.* at 77–82. One commentator, however, has identified the

following factors as important in the multiplant context: (1) common control of operations, (2) integration between the plants in products and in personnel matters, such as job classifications and interchange of employees between plants, (3) geographic considerations, and (4) the existing pattern of representation and the history of labor practices. T. Kheel, Labor Law, § 14.-03[3] (1978).

**13.** *See, e. g., Atlas Hotels, Inc. v. NLRB*, 519 F.2d 1330, 1334 (9th Cir. 1975) (per curiam); *MPC Restaurant Corp. v. NLRB*, 481 F.2d 75, 78 (2d Cir. 1973); *Ochsner Clinic v. NLRB*, 474 F.2d 206, 209 (5th Cir. 1973); *NLRB v. Gold Spot Dairy, Inc.*, 432 F.2d 125, 127 (10th Cir. 1970); *State Farm Mutual Automobile Ins. Co. v. NLRB*, 411 F.2d 356, 358 (7th Cir.), *cert. denied*, 396 U.S. 832, 90 S.Ct. 87, 24 L.Ed.2d 83 (1969). *But cf. Amalgamated Meat Cutters v. NLRB*, 170 U.S.App.D.C. 316, 319, 516 F.2d 1244, 1247 (1975) (per curiam) (Board may not create a more appropriate unit when union offers appropriate one).

1352, 1354 (9th Cir. 1970), the court upheld the Board's decision to group a single Sheraton hotel's employees in a separate appropriate bargaining unit although the Board acknowledged that a unit composed of employees of all the Sheraton hotels in the state would also be appropriate. The Board's decision to favor the smaller unit was held to be a lawful exercise of its discretion. As the Supreme Court has stated, "the appropriate unit is the one declared by the Board under § 9(b), not one that might be deemed appropriate under other circumstances." *Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 153, 61 S.Ct. 908, 912, 85 L.Ed. 1251 (1941).

In reviewing the Board's decision, therefore, it is not our duty to determine whether other units would be appropriate or inappropriate. We will uphold the Board's decision in this case if it is rational and in accord with its past precedent and if the unit chosen is appropriate.

### III

■ The union asserts that the finding that Kiewit and South Prairie form a single employer necessarily establishes an appropriate bargaining unit comprised of the operating engineers of both subsidiaries. Although the union points to some Board precedent to support its position, *see Royal Oak Tool & Machine Co.*, 132 N.L.R.B. 1361, 1371–2 (1961), *enforced NLRB v. Royal Oak Tool & Machine Co.*, 320 F.2d 77 (6th Cir. 1963); *Don Burgess Construction Corp.*, 227 N.L.R.B. 765, 774 (1977), *application for enforcement pending* (9th Cir. No. 77–3437),[14] the Board has stated that a "single-employer determination does not necessarily establish that an employer-wide unit is appropriate." *Central New Mexico Chapter, National Electrical Contractors Association, Inc.*, 152 N.L.R.B. 1604, 1608 (1965). This

principle was not only cited with approval by the Supreme Court in the present case, *see South Prairie Construction Co. v. Local 627, International Union of Operating Engineers*, 425 U.S. at 804, 96 S.Ct. 1842, but it formed the basis for the Supreme Court's decision to reverse this court and remand the case to the Board for a decision on the appropriate bargaining unit. We must therefore reject the union's argument.

### IV

■ The union contends that the Board's decision is inconsistent with its own precedent. The Board applied several factors to measure the degree of common interests shared by the South Prairie and Kiewit employees: bargaining history, the functional integration of operations, the differences in the type of work and the skills needed for the work, the extent of centralization of management and supervision, the extent of interchange and contact between the groups of employees. 231 N.L.R.B. No. 13, at 4–5. The Board found that separate bargaining units had not been established historically, that the subsidiaries function as substantially separate operations with respect to employee interests, that the skills of the employees are similar, that day-to-day supervision of workers is conducted separately by each company, and that, with two possible exceptions,[15] non-supervisory employees have not been interchanged between the subsidiaries. *Id.* at 5–8. The Board concluded that the two groups of employees have distinct interests and, thus, the South Prairie employees form a separate appropriate bargaining unit.

The Board's analysis closely follows the path set by *Central New Mexico*, 152 N.L.R.B. at 1604, in which the Board applied the "community of interests" standard to define the appropriate unit. *See* n.11 *su-*

---

14. In *Burgess*, the administrative law judge concluded that "the two Respondents constitute a single employer and under the circumstances of this case, a union contract executed by one Respondent is *ipso facto* binding on the other." Don Burgess Cons. Corp., 227 N.L.R.B. 765, 774 (1979), *application for enforcement pending* (9th Cir. No. 77–3437).

15. One Kiewit employee did temporarily work for South Prairie while remaining on the Kiewit payroll. *Local 627 v. NLRB*, 171 U.S.App.D.C. at 106, 518 F.2d at 1044. Also, three members of a "batch plant" crew working for Kiewit moved directly from a Kiewit assignment to a South Prairie job. Peter Kiewit Sons' Co., 206 N.L.R.B. at 567.

pra. The Board held that the employees of a single employer who operated an industrial electrical contractor and a residential electrical company did not constitute a single appropriate bargaining unit. The Board's decision relied on the following factors: "the separate supervision of employees of the two firms, their separate location, the lack of employee interchange, the absence of evidence showing functional integration, and the fact that the labor policies of NMECO, . . . are based on its own needs and are not dependent on those of Gamblin." Id. at 1608. All of the factors considered in Central New Mexico can be applied here to reach the same result.[16]

Nevertheless, the union presents two cases that allegedly depart from this analysis. In R. L. Sweet Lumber Co., 207 N.L.R.B. 529, enforced 515 F.2d 785 (10th Cir.), cert. denied, 423 U.S. 986, 96 S.Ct. 393, 46 L.Ed.2d 302 (1975), the Board initially determined that two corporations, one at an old location and the other at a new location, constituted a single employer. The Board found that employees at the new location should be in the same bargaining unit as employees who remained at the old location because the same employees were performing the same work for the same customers at the new location, the employees had a long bargaining history as part of the unit that remained at the old plant, and the employees had not become interchanged with other workers at the new location. Id.

at 534–35. In Don Burgess Construction Corp., 227 N.L.R.B. at 765, the Board held that employees of a single employer operating two contracting firms, one union and one nonunion, formed a single bargaining unit. The Board relied [17] "on the fact that all of the employees possess the same skills, perform the same functions, share the same general working conditions, and usually work at the same situs." Id.

These cases contain factual differences that justify a different outcome here. In particular, the R. L. Sweet case involved employees who had a long history of bargaining as part of another unit;[18] and the Burgess case concerned employees who performed under the same supervisors, usually at the same site.[19] Without intimating any view of the appropriateness of the Board's decision in either case, we do not believe they form precedent so inconsistent with the Board's decision so as to mandate reversal here. See NLRB v. Metropolitan Life Insurance Co., 380 U.S. 438, 442–43, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965); Columbia Broadcasting System, Inc. v. FCC, 147 U.S. App.D.C. 175, 183, 454 F.2d 1018, 1026 (1971).

Furthermore, the Board's decision is supported by its approach to an analogous issue of labor law—accretion.[20] Accretion is the incorporation of new employees into a preexisting bargaining unit when a community of interest exists between the new and old employees. An accretion decision requires reconciliation of two competing poli-

---

16. The Board in this case did not refer specifically to geographic location of the employees, but did state that the employees, who by the nature of the construction industry move from job site to job site, do not work together on projects. Peter Kiewit Sons' Co., 231 N.L.R.B. No. 13, at 5.

17. The Board also relied on the administrative law judge's conclusion that a union contract executed by one corporation of a single employer must necessarily be binding on the other corporation's employees. See n.14 supra and accompanying text.

18. In this case, South Prairie's entrance into Oklahoma occurred after Local 627 had negotiated its 1970 agreement with Kiewit, and the South Prairie employees were not part of the previous bargaining relationship with Kiewit.

19. Kiewit and South Prairie employees did not work on the same job site. See n.16 supra. Indeed, Oklahoma law barred both subsidiaries from bidding on the same jobs. Peter Kiewit Sons' Co., 206 N.L.R.B. at 564.

20. The union contends that the legal rules governing accretion provide no guidance in this case. We disagree, and note that in the R. L. Sweet case, which the union cites as controlling precedent, see text at —— of 194 U.S. App.D.C., at 850 of 595 F.2d supra, the Board defined the appropriateness of a bargaining unit without explicitly deciding whether a group of employees remained a part of another unit or had become an accretion to it. R. L. Sweet Co., 207 N.L.R.B. at 534.

cies: the need to insure stability of collective bargaining, *NLRB v. Appleton Electric Co.*, 296 F.2d 202 (7th Cir. 1961), and the need to allow a new group of employees to choose freely their bargaining representative, *see NLRB v. Masters-Lake Success, Inc.*, 287 F.2d 35, 36 (2d Cir. 1961) (per curiam). As a result, the Board has applied accretion restrictively, so as not to tread too heavily on the right of employees to choose their own collective bargaining representative. *See NLRB v. Security-Columbian Banknote Co.*, 541 F.2d 135, 140 (3rd Cir. 1976); *Westinghouse Electric Corp. v. NLRB*, 440 F.2d 7, 11 (2d Cir.), *cert. denied*, 404 U.S. 853, 92 S.Ct. 93, 30 L.Ed.2d 93 (1971); *Sheraton-Kauai Corp. v. NLRB*, 429 F.2d at 1355–56.

In this case, as in accretion cases, the Board was faced with a conflict between the promotion of stable collective bargaining, and the right guaranteed by section 7 of the National Labor Relations Act, 29 U.S.C. § 157 (1976) "to bargain collectively through representatives of [the employees] own choosing." The Board acknowledged the existence of the agreement binding Kiewit to recognize Local 627 as the representative of its employees, but also noted that only a few employees who had worked for Kiewit later worked for South Prairie. 231 N.L.R.B. No. 13, at 7.[21] Given the project-by-project hiring scheme used by these construction companies, it also appears that no construction employees were transferred by Kiewit to South Prairie. Within our limited scope of review, *see* text at —— —— of 194 U.S.App.D.C., at 848–849 of 595 F.2d *supra*, we cannot say that the Board's determination to classify the South Prairie employees as a separate unit was erroneous. Accordingly, the Board's decision is

*Affirmed.*

---

21. However, a few Kiewit employees apparently worked for South Prairie on two occasions. *See* n.15 *supra*. Some supervisors were transferred from Kiewit to South Prairie. Peter Kiewit Sons' Co., 231 N.L.R.B. No. 13, at 6; *see* n.8 *supra*.