United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued March 25, 1998 Decided June 9, 1998

 No. 97-1375

 Willamette Industries, Inc., 

 Petitioner

 v.

 National Labor Relations Board, 

 Respondent

 On Petition for Review and Cross-Application for 

 Enforcement of an Order of the 

 National Labor Relations Board

 William H. Walters argued the cause for petitioner, with 
whom Louis B. Livingston was on the briefs.

 Fred B. Jacob, Attorney, National Labor Relations Board, 
argued the cause for respondent, with whom Linda Sher, 
Associate General Counsel, Aileen A. Armstrong, Deputy 
Associate General Counsel, and David Habenstreit, Supervi-
sory Attorney, were on the brief.


 Lester V. Smith, Jr. was on the brief for amicus curiae 
Timber Operators Council.

 Harlan Bernstein was on the brief for amicus curiae 
Western Council of Industrial Workers.

 Before: Silberman and Ginsburg, Circuit Judges, and 
Buckley, Senior Circuit Judge.

 Opinion for the Court filed by Circuit Judge Silberman.

 Silberman, Circuit Judge: Petitioner Willamette Industries 
contends that the National Labor Relations Board failed to 
adequately explain why certification of a maintenance-only 
bargaining unit was appropriate, in light of the Board's 
previous practice and its prior precedent. We grant the 
petition for review, and deny the Board's cross-petition for 
enforcement.

 I. 

 At its Albany, Oregon facility, Willamette Industries man-
ufactures particleboard from wood by-products. Production 
employees work on the "line" turning raw materials into 
finished product, and maintenance workers are responsible 
for keeping the line running smoothly. Production and main-
tenance employees are included in the same collective bar-
gaining unit at all 21 of Willamette's organized lumber indus-
try plants, three of which are particleboard facilities. Local 
280 of the International Brotherhood of Industrial Workers, 
however, petitioned for an election only among the 40 mainte-
nance employees of the approximately 200 production and 
maintenance workers at the Albany plant. The Regional 
Director (Acting), after a contested hearing, directed an 
election in the unit sought by Local 280, which the Union won 
29-11. Petitioner refused to bargain with what it contended 
was an inappropriate unit in the lumber industry. In the 
ensuing unfair labor practice proceeding, the Board agreed 
with the Regional Director's unit determination.


 II.

 We grant wide deference to the Board's unit determina-
tions, mindful as we are, that the Board is not obliged to 
select the most appropriate unit but only an appropriate unit. 
American Hosp. Ass'n v. NLRB, 499 U.S. 606, 610 (1991); 
Local 627, Int'l Union of Operating Eng'rs v. NLRB, 595 
F.2d 844, 848 (D.C. Cir. 1979). Many representation cases, 
moreover, turn on disputed questions of fact. Accordingly, 
we often reject challenges to Board unit determinations sum-
marily, occasionally raising a judicial eyebrow that a petition-
er would even bring the case to us. This is not such a case.

 Petitioner argues that for a very long time the Board has 
certified only "wall-to-wall" units in the lumber industry. 
The Regional Director and the Board, it is asserted, have 
reversed course in this proceeding without an explanation, 
indeed without even acknowledging that a policy change was 
effected. In order to understand petitioner's position, which 
is supported by amici Timber Operators Council and the 
Western Council of Industrial Workers (the Union that repre-
sents employees in many lumber industry "wall-to-wall" 
units), it is necessary to review Board precedent going back 
almost 50 years. For a time, the Board flatly barred sepa-
rate "craft" or special department representation in the lum-
ber industry. See Weyerhaeuser Timber Co., 87 N.L.R.B. 
1076, 1082 (1949). That per se rule was adopted "[i]n view of 
the comprehensive and consistent history of industrial bar-
gaining, the extensive integration of all production and main-
tenance work, and the fact that the industry ha[d] tended to 
develop specialists rather than workmen in the craft tradi-
tion." Id. In 1966, the Board abandoned Weyerhaeuser's 
categorical approach, along with similar rules operating in 
other industries, in its Mallinckrodt Chemical Works deci-
sion. 162 N.L.R.B. 387, 398 n.17 (1966). But, the next year, 
in Timber Products Co., 164 N.L.R.B. 1060 (1967), the Board 
made clear that it would still look unfavorably on separate 
maintenance units in the lumber industry. In that case, a 
unit of maintenance electricians was rejected partly because 
of the "integrated aspects of [the] employer's operation" and 
partly because "the pattern of bargaining in [the lumber] 

industry ha[d] been almost exclusively on an industrial rather 
than craft basis, and that such bargaining ha[d] been condu-
cive to a substantial degree of stability in labor relations." 
Id. at 1063.1 Similar results (and reasoning) followed in 
Potlatch Forests, Inc., 165 N.L.R.B. 1065 (1967), and U.S. 
Plywood-Champion Papers, Inc., 174 N.L.R.B. 292 (1969). 
Member Fanning, dissenting in U.S. Plywood, 174 N.L.R.B. 
at 297, as he had in Timber Products, accused the Board of 
virtually having resurrected the Weyerhaeuser per se rule.

 That is how Board law stood prior to this case. And we are 
told that industry practice conforms to this "wall-to-wall" 
pattern. The Regional Director's decision nevertheless broke 
from this pattern. He found that the Albany plant's mainte-
nance employees had a separate "community of interest" 
because they had their own supervision, had a common 
function, were more highly-skilled than production workers, 
were on a higher wage scale, and did not regularly perform 
any production work. He dismissed the prior Board lumber 
cases as distinguishable on their "facts." He did not even 
mention the operations integration point that the Board cases 
had emphasized,2 and as to what Member Fanning had ob-
served was the all-important factor--the history of wall-to-

__________
 1 The Board also thought the electrical workers were more 
specialists than true craftsmen, but Member Fanning, who dissent-
ed, thought the Board's decision was really driven by the lumber 
industry's bargaining history. Timber Products, 164 N.L.R.B. at 
1067.

 2 Board's counsel argued that although the Regional Director 
did not explicitly consider the Board's "integrated operations" fac-
tor, his determination that the maintenance employees' job func-
tions substantially differed from the production employees' tasks 
was the equivalent. But in the Board's prior cases, the integrated 
operations factor looked to "the extent to which the continued 
normal operation of the production process is dependent upon the 
performance of the assigned functions of the employees in the 
proposed unit." Mallinckrodt, 162 N.L.R.B. at 397 (cited in Timber 
Products and Potlatch Forest for the proposition that integrated 
operations is relevant to lumber industry unit determinations).


wall bargaining units in the industry--the Regional Director 
had this to say:

 The Employer offered evidence that at others of its 
 plants, and in the lumber industry in general, production 
 and maintenance units are the rule. However, there is 
 no evidence that establishment of a maintenance-only 
 unit at the Albany plant would have any disruptive effect 
 on labor relations at the Employer's other plants or 
 otherwise in the industry.

 The Board, in its answer to Willamette's challenge to the 
unit determination in the unfair labor practice proceeding, 
agreed with the Regional Director that its prior cases were 
distinguishable because they involved a greater degree of 
integration and interchange of job functions between mainte-
nance and production employees. The Board also appeared 
to endorse the Regional Director's treatment of the industry 
bargaining pattern, interpreting one of its prior lumber cases 
as not relying so heavily on this factor. It said that while 
"the Board in U.S. Plywood ultimately determined that the 
petitioned-for maintenance department unit in that case was 
inappropriate, it did so primarily on the ground that the 
subject maintenance employees were not a distinct and homo-
geneous group, not on the basis of industry bargaining pat-
tern and stability." Willamette Indus., 323 N.L.R.B. No. 137, 
(1997).

 We do not think the Regional Director and Board's deci-
sions meet the reasoned decisionmaking standard of the APA. 
To be sure, Board precedent permitted a distinction to be 
drawn, as it always does in such cases, between the factors 
that point to a separate or common community of interest 
between maintenance and production workers--although, as 
we noted, neither the Regional Director nor the Board explic-
itly addressed the integration of operations factor. But there 
simply is no denying that in the lumber industry the standard 
wall-to-wall practice had always been given significant, if not 
dominant, influence on unit determinations. The Regional 
Director, while ostensibly addressing that factor, turned it 
inside out by asserting blithely that there was "no evidence" 


that establishing a maintenance-only unit in the Albany plan 
would have a "disruptive effect on labor relations at the 
Employer's other plants" (or otherwise within the industry). 
The Board in evaluating this factor in the past had always 
pointed to the positive evidence of labor stability as connected 
to the historical wall-to-wall bargaining units. It had never 
asked whether a deviation would cause instability. It is 
doubtful whether such speculative evidence could be pro-
duced, but, in any event, changing the focus in that way is 
equivalent to fundamentally downgrading that factor sub 
silentio. And because that factor was so important, its 
diminution causes a 180%A1 turn in policy with no Board expla-
nation. This will not do. See Drug Plastics & Glass Co. v. 
NLRB, 44 F.3d 1017, 1022 (D.C. Cir. 1995).

 * * * *

 In the order under review the Board neither properly 
considered the integration and bargaining-pattern factors 
that it had previously identified as important in determining 
the appropriate bargaining units in the basic lumber industry, 
nor did it explain why those factors no longer deserve the 
same weight that they have received in the past. According-
ly, we grant the petition for review and deny the application 
for enforcement.