**COUNTRY FORD TRUCKS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

International Association of Machinists and Aerospace Workers, AFL–CIO, Local 1528, Machinists District Lodge No. 190, Intervenor.

No. 99–1529.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 5, 2000.

Decided Oct. 27, 2000.

Michael K. Perkins argued the cause for petitioner. With him on the briefs was Ned A. Fine. Michael C. Towers entered an appearance.

Steven B. Goldstein, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Leonard R. Page, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Fred L. Cornnell, Jr., Supervisory Attorney.

David A. Rosenfeld was on the brief for intervenor International Association of Machinists and Aerospace Workers, AFL–CIO, Local No. 1528, District Lodge No. 190.

Before: GINSBURG, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Country Ford Trucks, Inc. petitions for review of a ruling by the National Labor Relations Board ("NLRB" or "the Board") that petitioner violated section 8(a)(5) and (1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(5), (1) (1994), by refusing to bargain with or provide requested information to a certified union. Country Ford challenges primarily the Board's determination that a collective bargaining unit consisting of service technicians and lube workers at one of its facilities was appropriate under section 9 of the NLRA, 29 U.S.C. § 159 (1994). Because petitioner fails to demonstrate that NLRB abused its discretion in making the unit determination, and because there are no grounds upon which petitioner could rightfully refuse to provide the union with the requested information, we affirm the NLRB.

## I. Background

### A.

Country Ford Trucks, Inc. ("Country Ford") is a truck dealership in Ceres, California that sells, modifies, and services light-duty and heavy-duty trucks. Country Ford operates two facilities. The main facility, referred to as the "Old Building," is the primary location for sales and service of trucks. The second, known as the "Annex," is across the street and operates under the name of Ceres Truck Equipment. Country Ford opened the Annex approximately two years ago because the Old Building was not large enough to accommodate Country Ford's expanding business. Since that time, the Annex has specialized in servicing, equipping, and modifying trucks. The central issue in dispute is whether an appropriate collective bargaining unit under the NLRA may consist of selected employees with defined functions at one of the two facilities.

At the main facility, the service department consists of several service advisors who deal with customers seeking truck service, approximately fourteen service technicians who diagnose and repair trucks, and two lube workers who perform lubes, oil and filter changes, and the like, as well as detailers, shuttle drivers, a booker, cashier, and janitor. The parts department consists of approximately thirteen employees who service retail customers, obtain parts for repairs and pick up, and deliver warehouse parts. At the main facility employees work in one of two shifts: 7:00am to 4:00pm and 3:30pm to midnight.

The service technicians at the main facility work either day or evening shifts. They are the employees primarily responsible for the actual servicing and repair of customer vehicles. Several are certified by Ford or Automotive Service Excellence ("ASE"), and at least two are master mechanics. Service technicians are paid an hourly wage, receive commissions based upon their efficiency and can receive "up-sell commissions" for additional work authorized by a customer that was recommended by a technician. Unlike other workers at the main facility, service technicians are required to provide their own tools, which can be worth between $750 and $30,000. The technicians wear blue uniforms with a red stripe and Ford logo. The company holds regular meetings for service technicians at 3:30pm.

The lube workers also work either day or evening shifts. The lube workers work alongside the service technicians and are primarily responsible for oil and filter changes, lubes, and basic service, such as installing truck hitches. The lube workers are not certified, and the company does not offer any sort of apprenticeship program. Nonetheless, lube workers occasionally assist the service technicians with repairs, and will help align transmissions or replace clutches. Lube workers are paid hourly. One lube worker owns his own tools, the other does not. The lube workers and the service technicians report to the same supervisor.

At the Annex there are several installer/fabricators, a parts employee, and an estimator. The installer/fabricators are technically part of Country Ford's service department. The Annex employees are primarily responsible for installing custom beds and other features on trucks sold by Country Ford and those brought in for service or other work. Sometimes work will be performed on the same truck at both locations, as when modifications are made to trucks bought at the main location—and some of the work performed at the Annex, such as air conditioner and hitch installation, and transmission and brake work is also performed at the main facility.

Installer/fabricators employed at the Annex must be able to weld and are administered a welding test prior to employment. Like the service technicians, the installer/fabricators are required to provide their own tools. There is only one shift at the Annex, however, and Annex

workers have a separate supervisor than the service department employees. Annex employees have a different uniform and are paid an hourly wage without any commission or bonuses.

Country Ford employs one human resources manager for both facilities. Country Ford's Parts and Service Director also interviews all applicants for either facility. Employees at both facilities are on the same payroll and have the same vacation and benefit policies, as well as use the same break room (though there is an additional break room in the Annex). Employees are rarely transferred from one facility to the other. All Country Ford employees attend occasional safety meetings and company functions.

### B.

On April 27, 1999, Machinists District Lodge No. 190, Local 1528 of the International Association of Machinists and Aerospace Workers ("the Union") filed an election petition with the NLRB Regional Director. The Union sought to represent a unit of employees at Country Ford Trucks consisting of "All Journeyman and Apprentice Technicians and Lubricators." After conducting a hearing, the NLRB's Regional Director for Region 32 accepted the Union's petition and, on June 16, 1999, directed an election of:

> All full-time and regular part-time service technicians and lubricators employed by [Country Ford Trucks] at its Ceres, California location excluding all other employees, office clerical employees, guards, and supervisors as defined in the Act.

The Regional Director found that 16 employees at Country Ford Trucks met this definition. Country Ford filed a Request for Review with the NLRB, which was denied. One Board member, Peter Hurtgen, noted that the Regional Director's conclusion may be in tension with prior NLRB precedent, but nonetheless concurred because Country Ford failed to contest the Regional Director's findings.

An election was held on July 13, 1999. The Union won by a vote of 9 to 7 and was certified on July 29. Upon certification, the Union requested collective bargaining with Country Ford and submitted a request for information "for the purposes of bargaining." Among other things, the Union requested a list of current employees, with their date of hire, job classification and pay rate, details on Country Ford's benefit plans and employment policies, and shift schedules. Country Ford responded with a letter refusing to bargain or supply the requested information on the grounds that the company would be challenging the unit determination in federal court.

On September 1, 1999, the Union filed a complaint alleging that petitioner's refusal to bargain and to supply the requested information were unfair labor practices. Country Ford acknowledged its refusal to bargain and maintained that the information request should not be dealt with until the validity of the bargaining unit was determined. Country Ford further complained that the Union failed to explain the requested information's relevance to its representation of the bargaining unit and that the request was overbroad in that it was not limited to unit employees. On September 28, the Union wrote Country Ford's counsel explaining that its request "applie[d] to bargaining unit employees." While the Union originally requested information covering the prior three years, the September 28 letter stated the Union was willing to limit its request to one-year's worth of information.

On November 30, 1999 the NLRB issued a summary judgment on behalf of the Union. *See* 330 N.L.R.B. No. 42 (1999). The Board found, as a matter of law, that Country Ford's refusal to bargain with and provide requested information to the Union violated section 8(a)(5) and (1) of the NLRA. Country Ford petitioned this Court for review, and the Board cross-petitioned for enforcement.

## II. Discussion

### A. The Unit Determination

The National Labor Relations Act delegates to the National Labor Relations Board the power to determine what constitutes an "appropriate" employee unit for collective bargaining purposes. Under section 9(a) of the Act, union elections are held by "a unit appropriate for such purposes." 29 U.S.C. § 159(a). Section 9(b) provides that "[t]he Board shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the[ir] rights ... the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." 29 U.S.C. § 159(b). Once a unit is selected, a majority vote of the employees in that unit can designate a union as the exclusive bargaining representative for all employees within the unit. *See* 29 U.S.C. § 159(a).

■ This court will uphold an NLRB bargaining unit determination unless it is arbitrary or not supported by substantial evidence in the record. *See Cleveland Constr., Inc. v. NLRB*, 44 F.3d 1010, 1014 (D.C.Cir.1995). In reviewing the record, "[w]e owe substantial deference to inferences drawn from the facts" as well as to "the reasoned exercise of [the Board's] expert judgment." *Avecor, Inc. v. NLRB*, 931 F.2d 924, 928 (D.C.Cir.1991) (internal quotes omitted). Determining what constitutes an appropriate unit "involves of necessity a large measure of informed discretion, and the decision of the Board, if not final, is rarely to be disturbed." *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). "The Board is entitled to deference on its selection of an appropriate unit." *Cleveland Constr.*, 44 F.3d at 1014.

■ Petitioner's primary claim is that the Board erred in its unit determination because other potential units, such as a pure "craft" unit of service technicians or a broader unit encompassing all parts and service department employees at both facilities, would have been more appropriate. However, "the existence of alternative units which are 'appropriate' will not alone warrant reversal if the Board has chosen some other unit which is also appropriate." *Local 1325, Retail Clerks Int'l Ass'n v. NLRB*, 414 F.2d 1194, 1202 (D.C.Cir.1969). It is well established that "[m]ore than one appropriate bargaining unit logically can be defined in any particular factual setting." *Local 627, Int'l Union of Operating Eng'rs v. NLRB*, 595 F.2d 844, 848 (D.C.Cir.1979). The NLRA does not establish an "absolute rule of law" as to what constitutes an appropriate bargaining unit. *Packard Motor Car*, 330 U.S. at 491, 67 S.Ct. 789. Rather, it delegates to the Board the responsibility to make a reasonable determination supported by its own precedent and evidence in the record. That this Court, or other reasonable people, may prefer a bargaining unit with different contours is immaterial as "a reviewing court may not substitute its own judgment for a rationally supported position adopted by the Board." *Local 627*, 595 F.2d at 848. Only those unit determinations that are truly inappropriate will be struck down.

■ Petitioner argues that the NLRB's Regional Director erred by combining service technicians and lube workers into a single "craft" unit. Petitioner notes the Board has approved units consisting of craft technicians and their helpers, trainees, or apprentices. In such cases a single craft unit is appropriate because the helpers, trainees, or apprentices "interface" with the technicians and may themselves receive training to become skilled craft technicians over time. *See, e.g., Fletcher Jones Chevrolet*, 300 N.L.R.B. 875, 876 (1990). The lube workers at Country Ford, on the other hand, have limited responsibilities and do not receive technician training. While these are reasonable arguments for excluding the lube workers from a bargaining unit of service technicians, there is no binding precedent from

this Court or the NLRB itself that dictates such a conclusion.

In deciding that the lube workers were "akin" to the sorts of "helpers or trainees" included in craft units in prior cases, the Board's Regional Director noted that the lube workers, unlike other parts and service employees in the main facility, "engaged in mechanical work" alongside the service technicians. This finding is supported by substantial evidence in the record. For example, while Country Ford claims that lube workers only perform lube jobs, oil and filter changes, and the like, there is testimony in the record indicating that lube workers also install hitches and assist technicians with other repairs. There is also testimony in the record indicating that whatever assistance or interaction the service technicians have with other employees, such as the service advisors, the lube workers are the only employees in the service department that provide hands-on, manual assistance with repairs and service. Petitioner is unable to identify any evidence in the record demonstrating that other workers perform equivalent assistance to the service technicians.

The Regional Director's unit determination was also consistent with prior NLRB precedent in which lube workers or other helpers were included in a bargaining unit along with skilled technicians. In *Fletcher Jones Chevrolet*, for example, the NLRB included lube workers (there labeled "quick service technicians") in a craft unit of service technicians because they performed simple repairs and worked closely with the other technicians in the unit. 300 N.L.R.B. at 876. Similarly, in *Dodge City of Wauwatosa, Inc.*, the Board recognized a unit of auto mechanics, including technicians that specialized in oil and lube work, as appropriate under the NLRA. 282 N.L.R.B. 459–60 (1986).

Petitioner cites language in *Worthington Chevrolet, Inc.*, indicating that a broader bargaining unit would be more appropriate. 271 N.L.R.B. 365, 366 (1984) ("Where as here all employees in the service and parts department of an automobile sales and service establishment perform functions related to the service and repair of automobiles, the Board has long held that a unit of all employees in the service department is appropriate."). However, the Board has explicitly disavowed such statements as "overbroad and not entirely accurate," *Dodge City of Wauwatosa*, 282 N.L.R.B. at 460 n. 6. In *Dodge City*, the Board distinguished between cases in which "all employees" in the service and parts department perform similar functions and those in which the mechanics form a "distinct and homogenous group." *Id.* at 460.

■ NLRB concedes that there are other cases in which it found a broader unit of service department employees to constitute an appropriate unit. Yet this fact does not compel a different result, as there is no need to harmonize all NLRB decisions into a "uniform pattern." *NLRB v. DMR Corp.*, 795 F.2d 472, 475 (5th Cir.1986) (internal quotes omitted). At bottom, the cases cited by the Company do not "form precedent so inconsistent with the Board's decision as to mandate reversal." *Local 627*, 595 F.2d at 850.

■ While the company contends that the unit should include all other parts and service employees, including those at the Annex, it offers no convincing reason why the Board was *required* to reach that conclusion under the law or precedents. The workers at the Annex perform different functions than the technicians and lube workers and are required to have different skills. They also do not share work hours (*i.e.*, they lack a night shift) or compensation (*i.e.*, they do not receive any commissions). Other factors, such as those considered in *Mallinckrodt Chem. Works*, 162 N.L.R.B. 387 (1966), do not mandate a different result. There is no "hard and fast definition or an inclusive or exclusive listing" of the factors to consider. *Id.* at 398. Rather, unit determinations must be made only after "weighing . . . all relevant

factors on a case-by-case basis." *Id.* Based upon the record of this case, consideration of all relevant factors reinforces our judgment that the NLRB's Regional Director reached a reasonable conclusion.

■■■■■ Petitioner also charges that the Regional Director's decision was too deferential to the Union's proposed unit determination. Even if proven, this charge would be irrelevant. As the Supreme Court made clear in *NLRB v. Metropolitan Life Insurance Co.,* "the language and legislative history of § 9(c)(5) demonstrate that the provision was not intended to prohibit the Board from considering the extent of organization as one factor, though not the controlling factor, in its union determination." 380 U.S. 438, 441–42, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965) (footnotes omitted). Indeed, the NLRB may simply look at the Union's proposed unit and, if it is an appropriate unit, accept that unit determination without any further inquiry. *See Cleveland Constr.,* 44 F.3d at 1013.

■■■ NLRB is expected to make unit determinations on a case-by-case basis. The Board's unit determinations are upheld so long as the identified unit is appropriate and the decision is consistent with precedent and is supported by substantial evidence. The Board's unit determination meets this deferential test. That other potential unit determinations appear equally or more appropriate is insufficient to justify reversal.

### B. The Information Request

■■■ Petitioner further challenges the Board's determination that it committed an unfair labor practice by failing to provide the Union with the information it requested. The Union's request, petitioner charges, was overbroad and burdensome, and failed to indicate the relevance of the information sought. Petitioner further charges that the Union made its request in bad faith. These factors, petitioner maintains, justified a full hearing prior

to the Board's determination that it committed an unfair labor practice. None of these claims has any merit.

The law is clear. An employees' bargaining representative is entitled to the sort of information requested by the Union in this case. Country Ford's failure to provide such information is a violation of the NLRA. *See Detroit Edison Co. v. NLRB,* 440 U.S. 301, 303, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979) ("The duty to bargain collectively, imposed upon an employer by § 8(a)(5) of the National Labor Relations Act includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative.") (footnote omitted). If the NLRB Regional Director's initial unit determination is upheld, there is no basis for an employer to refuse a certified union's request for presumptively relevant information about represented employees.

■■■ Employees' certified representative is entitled to information that "will enable[ ] the union to negotiate effectively and to perform properly its other duties as bargaining representative." *Oil, Chemical & Atomic Workers Local Union No.6–418 v. NLRB,* 711 F.2d 348, 358 (D.C.Cir.1983) (internal quotes omitted). The information requested must be relevant to the union's representation, but the threshold for relevance is low. *See NLRB v. Acme Industrial Co.,* 385 U.S. 432, 437–38, 87 S.Ct. 565, 17 L.Ed.2d 495 (1967). Information related to the wages, benefits, hours, working conditions, etc. of represented employees is presumptively relevant to collective bargaining. *See Oil, Chemical & Atomic Workers,* 711 F.2d at 359.

The Union sought such information stating that it was needed "for bargaining purposes," and Country Ford deliberately refused. Thus, NLRB properly concluded that the Company committed an unfair labor practice. Because the information requested was "presumptively relevant" for bargaining purposes, no further expla-

**1192**

nation was required. As this Court noted, "the rationale underlying the presumptive relevance rule [is to] avoid[ ] ... 'potentially endless bickering ... over the specific relevance of information, the very nature of which ought to render its relevance obvious.'" *Id.* at 359 n. 26 (quoting *Emeryville Research Ctr., Shell Dev. Co. v. NLRB*, 441 F.2d 880, 887 (9th Cir.1971)). Vague allegations of a union's bad faith do not change the result. Under NLRB precedent, the "good faith" requirement is met so long as "at least one reason for the demand can be justified." *E.g., Island Creek Coal Co.,* 292 N.L.R.B. 480, 489 (1989) (citing *Hawkins Constr. Co.,* 285 N.L.R.B. 1313 (1987), *enf. denied on other grounds,* 857 F.2d 1224 (8th Cir.1988)), *enforced,* 899 F.2d 1222 (6th Cir.1990) (unpublished table decision).

Even accepting, for the sake of argument, that the Union's request was overbroad, this does not excuse the Company from providing the requested information to which the Union had an undisputed right. *See, e.g., Oil, Chemical & Atomic Workers,* 711 F.2d at 361 (citing *Fawcett Printing Corp.,* 201 N.L.R.B. 964, 975 (1973)). That petitioner knew that it could satisfy the Union's information request by only providing information about bargaining unit employees is beyond dispute. After Country Ford initially refused to provide the requested information, Union counsel clarified that its request applied only to information about represented employees. Yet petitioner still refused to provide any information. The alleged overbreadth of the Union's information request is also irrelevant because the Board only found that petitioner engaged in an unfair labor practice by failing to provide information about unit employees.

### III. Conclusion

For the foregoing reasons, we deny the petition for review on both grounds and grant NLRB's application for enforcement of the Board's order of November 30, 1999 finding that Country Ford Truck, Inc.

committed an unfair labor practice by refusing to bargain with, and provide requested information to, a certified collective bargaining representative in violation of the NLRA.