**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-117**

**Filing Date: October 19, 2011**

**Docket No. 30,059**

**SAN JUAN COLLEGE,**

       **Plaintiff-Appellant,**

**v.**

**SAN JUAN COLLEGE**
**LABOR MANAGEMENT**
**RELATIONS BOARD,**

       **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Bingham, Hurst & Apodaca, P.C.
Wayne E. Bingham
Albuquerque, NM

for Appellant

Rita G. Siegel
Albuquerque, NM

for Appellee

**OPINION**

**KENNEDY, Judge.**

**{1}**    San Juan College (the College) appeals its Labor Relations Management Board's (the Board) decision regarding the appropriate composition of a faculty member's collective bargaining unit. The College maintains that the faculty member group was unduly restricted. The undisputed applicable factors for consideration in defining the bargaining unit are a proper "community of interest" and "occupational group." We hold that the

1

Board's decision as affirmed by the district court was supported by substantial evidence and affirm.

## I.    BACKGROUND

{2}    In March 2008, a union filed a petition with the State Public Employer Labor Relations Board to represent full-time faculty on nine-month contracts at the College. The petition was dismissed by the state board and remanded to the Board on the College's motion. At the local Board, the College challenged the appropriateness of the proposed bargaining unit as too narrow and sought to include all full-time faculty on nine- and ten-month contracts, as well as full-time instructional professionals with 100%, 80%, 60%, and 50% instructional duties. These percentages reflect a division in the workload for those persons between instructional and administrative duties. For instance, the 60% instructional professional would also be employed to perform 40% of their work as an administrator. The Board held a hearing and took testimony and other evidence. At the hearing, Michael Tacha, Vice President for Learning, testified to the faculty structure at the College and gave his opinion that, as to the fractional duties of employees, management and administrative duties were comparable. The Board issued its decision that the appropriate bargaining unit would include full-time faculty on both nine- and ten-month contracts, and full-time instructional professionals with 100% instructional duties. The bargaining unit would exclude full-time instructional professionals with less than 100% instructional duties, administrative and managerial staff, and all others.[1] From this ruling, the College appealed to the district court, which affirmed the Board. The College now appeals.

## II.    STANDARD OF REVIEW

{3}    The Public Employee Bargaining Act, NMSA 1978, § 10-7E-23(B) (2003), instructs reviewing courts that "[a]ctions taken by the board or local board shall be affirmed unless the court concludes that the action is (1) arbitrary, capricious[,] or an abuse of discretion; (2) not supported by substantial evidence on the record considered as a whole; or (3) otherwise not in accordance with law." The court views the evidence in a light most favorable to the Board's decision and employs a deferential standard to the decision concerning areas within the agency's expertise. While we do not substitute our judgment for that of the Board, we examine the record to determine whether it supports the result. *N.M. State Bd. of Psychologist Exam'rs v. Land*, 2003-NMCA-034, ¶ 5, 133 N.M. 362, 62 P.3d 1244. If the findings do not support the result, we may adopt facts from the record before us in reaching our decision. *Sanchez v. N.M. Dep't of Labor*, 109 N.M. 447, 449, 786 P.2d 674, 676 (1990). We review whether the Board's decision was in accordance with law employing a de novo standard of review. *Selmeczki v. N.M. Dep't of Corr.*, 2006-NMCA-024, ¶ 13, 139 N.M. 122, 129 P.3d 158. In this case, the parties agree on the nature of the case, the scope

---

[1]Should other facts become necessary to our discussion, we will include them.

of the relevant facts, the standard of review, and the applicable law. The parties dispute the law's application to the facts.

## III.    DISCUSSION

{4}     The question in this case is: What is an appropriate bargaining unit? Under both state law and the Board's resolution, the criteria are virtually identical. The Board is established pursuant to the San Juan College Labor Management Relations Resolution (Resolution) and oversees the collective bargaining process for the College pursuant to the Resolution and Public Employee Bargaining Act (PEBA). NMSA 1978, §§ 10-7E-1 to -26 (2003). Both the Resolution and the PEBA presume appropriate bargaining groups to "be established on the basis of occupational groups or clear and identifiable community of interest in employment terms, employment conditions, and related personnel matters among the employees involved." College LRB Resolution, § 10(A). The Resolution and PEBA define an appropriate bargaining unit in substantially similar terms.

{5}     The Board is entitled to determine an appropriate bargaining unit without being hamstrung by having to declare "the most appropriate [bargaining] unit." *Cmty. Hosps. of Cent. Cal. v. NLRB*, 335 F.3d 1079, 1084 (D.C. Cir. 2003) (emphasis omitted) (internal quotation marks and citation omitted); *Blue Man Vegas, LLC v. NLRB*, 529 F.3d 417, 421 (D.C. Cir. 2008). The difference between "a" most appropriate unit and "the" most appropriate unit rests in the fact that sharing a community of interest does no more than establish a unit that is prima facie appropriate, and "more than one appropriate collective bargaining unit logically can be defined in any particular factual setting." *Country Ford Trucks, Inc. v. NLRB*, 229 F.3d 1184, 1189 (D.C. Cir. 2000). That a unit with "different contours" might exist is immaterial. *Id.* Specific to this case, the College must show that the employees excluded from the bargaining unit share an "overwhelming community of interest with the included employees[.]" *Blue Man Vegas*, 529 F.3d at 421. There is no absolute rule of law as to what constitutes an appropriate bargaining unit. *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491 (1947). Because it is the Board's task to choose among bargaining units that are perhaps equally appropriate and because we do not substitute our judgment for the reasonable determination of the Board, we are limited to striking down only those determinations that are "truly inappropriate." *Country Ford Trucks*, 229 F.3d at 1189.

{6}     Both parties agree that it is the employer's burden, if it seeks to overturn the Board's decision, to demonstrate that the Board's decision resulted in a "truly inappropriate" unit. *Blue Man Vegas*, 529 F.3d at 421 (internal quotation marks and citation omitted). This results in a high standard of proof set against a firmly set tradition of deference to the Board's decisions.

{7}     Here, the College maintains that professional instructors with less than 100% instructional duties—and, by definition, partial administrative and managerial duties—should not have been excluded. The College relies heavily on the testimony given by Tacha to establish the "overwhelming" shared community of interest between the full-time faculty with fractional instructional/administrative duties from those who are employed

3

full time to teach as 100% of their duties. The College asserts with some hyperbole that there was "no legitimate basis" to exclude the other instructional staff which the College sought to include in the unit. From the College's summary of Tacha's testimony, we gather that all faculty are a community of interest whose purpose at the College is instructional. All who teach students are faculty and receive the same benefits. The College's statement that "[t]he [u]nion presented no testimony substantial enough to contradict the above testimony" reminds us that the College sought the inclusion of the instructional professionals in addition to the nine- and ten-month contract faculty members that were not part of the union's petition. Tacha's testimony indicated that carving away the instructional professionals from other faculty members would create division in the faculty community as the College was trying to erase such differences. We surmise this is a statement of the College's purpose in seeking full inclusion of all faculty members. We determine whether the composition approved by the Board was supported by substantial evidence and in accordance with law. However, we also take into account the union's presentation of a large amount of testimony in reviewing the Board's decision.

{8} We do not take a position in this case as to whether the College's view of the appropriate bargaining unit might be correct. We are not obligated to do so, owing to the deference we pay to the Board's decision and our substantial evidence review. The Board's conclusion as to an appropriate bargaining unit must only be an appropriate unit among what may properly be more than one. We therefore concern ourselves with the difference between full-time faculty and instructional professionals with 100% teaching duties, and those instructional professionals "who spend 80%, 60%[,] and 50% of their time teaching [and] spend the remaining percentage of their time performing various administrative duties in connection with College programs in which they are involved." (Emphasis omitted.)

{9} The College only argues to us that, although correct as far as it went, the Board's decision established an inappropriate unit that should not have failed to include all of the faculty. We disagree. The College points out that the administrative duties occasioned by the fractional contracts consist of ordering materials, project preparation, and budgeting. Testimony before the Board from Mr. Williams, the union's primary witness, indicated that those Instruction Professionals whose contracts included administrative duties were workers of a different sort—working under annual contracts in contrast to continuing faculty contracts and receiving a pay component for administrative work that occasionally enhanced the salary beyond faculty levels. Instruction Professionals have a different way of bringing grievances about their contracts to the College than do instructors who work under faculty contracts. Faculty members who work pursuant to faculty contracts operate under a different employee handbook than do instructional professionals whose job terms more resemble a contract employee who teaches than a true faculty member. Faculty contracts are made for the academic year while Instruction Professionals' contracts are for the fiscal year. Faculty contracts impose requirements having to do with academic expectations that the Instruction Professionals' contracts do not have. Faculty contracts also limit outside employment where the Instruction Professionals' contracts do not and are terminated pursuant to the "Faculty Handbook" where the Instruction Professionals' contracts may not be changed or amended, save by the President of the College, and their working parameters are governed by the "Employee Handbook for Professional & Support Staff." When renewed, faculty contracts

4

remain in continuing status for the next contract year where Instruction Professionals' renewals "place [the instructor] on 'continuing contract' status . . . effective with the start date of your next year contract." Sick leave and annual leave accrual are handled differently between faculty and instructional professionals. The Board points out that the instructional professionals with less than 100% teaching duties are employed under a different contract that divides their work between instruction and administrative/managerial duties. They are subject to dual lines of supervision, one for each side of their role at the College, which may subject them to conflicting loyalties. This said, instructional professionals employed to provide 100% instruction without other duties or contractual obligations, perform substantially identical jobs as full-time faculty who also are contracted as full-time instructors. The logic of combining these groups is apparent and substantially supported by the evidence.

**{10}** Having reviewed the record upon which the Board based its decision, we see that full-time faculty, whether pursuant to nine- or ten-month contracts, engage in full-time academic instruction during applicable periods of the school year. Instructional professionals with 100% teaching duties do as well, even though their contract periods are different. Instructional professionals with fractional duties have other responsibilities than teaching and receive additional compensation for performing these other duties. In our view, it is reasonable to accord full-time teaching personnel whose exclusive job is teaching, the community of interest required to establish a proper bargaining unit.

**{11}** In accordance with our standard of review, as we resolve all factual disputes in favor of the Board's decision, including indulging all reasonable references, we determine that substantial evidence supports the result that was reached. *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. We need only find that there is credible evidence for a reasonable mind to accept as adequate the Board's result. *Id.* Having done so, we affirm the Board's decision creating a bargaining unit of faculty members with nine- and ten- month contracts and full-time instructional professionals employed at 100% instruction.

## IV.   CONCLUSION

**{12}** Based upon the foregoing analysis, we affirm the district court.

**{13}   IT IS SO ORDERED.**

---

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

---

**MICHAEL D. BUSTAMANTE, Judge**

---

5

**MICHAEL E. VIGIL, Judge**

**Topic Index for *San Juan College v. San Juan College Labor Mgmt. Bd.*, No. 30,059**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW AND PROCEDURE** |
| AL-AA | Administrative Appeal |
| AL-SE | Sufficiency of Evidence |
| | |
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| AE-SB | Substantial or Sufficient Evidence |
| | |
| **EL** | **EMPLOYMENT LAW** |
| EL-CB | Collective Bargaining |
| EL-LU | Labor Unions |
| EL-UO | Union Organizing |
| | |
| **GV** | **GOVERNMENT** |
| GV-PE | Public Employees |